SCOTT & FETZER COMPANY, Plaintiff-Appellant, v. MONTGOMERY WARD & COMPANY, INC., *et al.*, Defendants and Third-Party Plaintiffs-Appellants (Burns Electronic Security Services, Inc., Third-Party Defendant-Appellee).

SALES DEVELOPMENT SERVICES, INC., Plaintiff-Appellant, v. MONTGOMERY WARD, INC., *et al.*, Defendants and Third-Party Plaintiffs-Appellants (Burns Electronic Security Services, Inc., Third-Party Defendant-Appellee).

AETNA INSURANCE COMPANY, Plaintiff-Appellant, v. MONTGOMERY WARD & COMPANY, INC., *et al.*, Defendants and Third-Party Plaintiffs-Appellants (Burns Electronic Security Services, Inc., Third-Party Defendant-Appellee).

TOYOMENKA (American), INC., *et al.*, Plaintiffs-Appellants, v. MONTGOMERY WARD & COMPANY, INC., *et al.*, Defendants and Third-Party Plaintiffs-Appellees (Burns Electronic Security Services, Inc., Third-Party Defendant-Appellee).

First District (1st Division)   Nos. 83—1747, 83—2225, 83—2328 cons.

Opinion filed December 24, 1984.

Robert A. Downing, Gerald L. Angst, David F. Graham, and Christopher J. Michas, all of Sidley & Austin, of Chicago, for appellant Montgomery Ward & Company.

Clausen, Miller, Gorman, Caffrey & Witous, P.C., of Chicago (James T. Ferrini, Thomas A. McDonald, Thomas J. Skeffington, and Lisa Marco Kouba, of counsel), for other appellants.

Sandra Young, Mark E. Parsky, D. Timothy McVey, and Edward C. Purcell, all of Purcell & Wardrope, Chartered, of Chicago, for appellee.

PRESIDING JUSTICE BUCKLEY delivered the opinion of the court:

The instant consolidated appeals arise from a fire which broke out in the Montgomery Ward & Company, Inc. (Wards), warehouse in Bensenville. Wards' fire alarm and sprinkler system allegedly malfunctioned, and the fire spread to the adjoining premises of the warehouse. Extensive property damage resulted. The tenants of the adjoining premises brought an action in tort against Burns Electronic Security Services, Inc. (Burns), who supplied, installed and maintained the alarm system. The trial court dismissed the action, reasoning that recovery in tort for the loss incurred was barred by the economic loss rule. The court also dismissed a third-party action brought by Wards against Burns seeking contribution and rescission. Both dismissals are now appealed from.

The record reflects that on November 21, 1973, Wards leased a warehouse at 1010 Foster Avenue in Bensenville. The warehouse was part of a larger storage facility covering 1010 to 1020 Foster Avenue. The building at 1020 Foster Avenue was leased by General Warehouse & Transportation Company, who in turn subleased the premises to the following six plaintiffs in this case (hereinafter referred to as "adjacent tenants"): Scott & Fetzer Company, Toyomenka (American Sales Development Services, Inc.), the Readers Digest Association, Inc., R. D. Manufacturing Corporation and N.S.I. Merchandising, Inc., who is represented in this matter by Aetna Insurance Company as its subrogee. The adjacent tenants stored stock, inventory and supplies on the premises. Wards stored flammable materials on its premises and was required under its lease with the owner to provide the appropriate safety appliances.

On December 18, 1973, Wards and Burns entered into a contract by which Burns undertook to install fire protection equipment and a fire warning system in the Wards premises at 1010 Foster Avenue. A fee of $1,712 covered installation of the "central station protection signalling system." An additional monthly charge initially set at $1,358 obligated Burns to maintain the system "in good working order" until the termination of the agreement. For an additional cost, Wards subscribed to Burns' sprinkler "water flow system," which included the installation of numerous additional protective devices, plus Burns' provision for "stand-by power supply." Additionally, paragraph 10 of the contract contained the following exculpatory provisions:

"*** [Wards] does not desire this contract to provide for full liability of [Burns] and agrees that [Burns] shall be exempt from liability for loss or damage due directly or indirectly to occurrences, or consequences therefrom, which the service is designed to detect or avert; that if [Burns] should be found liable for loss or damage due to a failure of the service in any respect, its liability shall be limited to a sum equal to 10% of the annual service charge or $250.00, whichever is the greater, and that the provisions of the paragraph shall apply if loss or damage, irrespective of cause or origin, results directly or indirectly to persons or property from performance or nonperformance of the obligations imposed by this contract or from negligence, active or otherwise, of [Burns], its agent or employees."

The adjacent tenants were not parties to the contract between Wards and Burns.

The above contract was in force on September 21, 1978, when a fire began at Wards' Foster Avenue warehouse. Burns' equipment allegedly failed to function properly and timely detect or warn of the fire. Eventually, a fire alarm signal was transmitted to Burns' central station. Despite its receipt of the signal, Burns purportedly delayed in notifying the local fire department of the existence of the fire. When firemen finally arrived, the fire was no longer containable and had spread into portions of the warehouse occupied by the adjacent tenants. The warehouse was destroyed, along with most of the personal property located in it. The loss from the fire is alleged to total millions of dollars.

On June 8, 1979, Wards brought an action in the circuit court of Cook County against the owners of the warehouse for a refund of real estate tax overpayments made under a prepayment formula in the lease. On September 14, 1979, the owners filed a counterclaim seeking recovery for losses caused by the warehouse fire. The owners alleged, *inter alia*, that under the lease with Wards, Wards "was required to keep the leased premises' fire protection system in good working order, repair and condition." The owners further alleged that Wards was negligent in storing flammable materials in the warehouse, and by causing "a lighted cigarette to be thrown into flammable articles of clothing stored on the floor."

Subsequently, the adjacent tenants filed suit against Wards and La Salle National Bank, as trustee, the legal title holder of the property. The adjacent tenants sought recovery for property damage and business losses purportedly caused by the fire. They alleged in their complaints that as a result of various negligent acts and omissions by

Wards and/or its employees, the fire started in Wards' portion of the warehouse and spread throughout, destroying the tenants' premises, products and inventory.

Wards thereafter filed five identical third-party actions against Burns, alleging in each action that Burns negligently performed its contractual duties. The amended third-party complaint attempted to state a cause of action for breach of contract (count I), rescission (count II), contribution based on negligence (count III) and wilful and wanton negligence (count IV), and fraudulent misrepresentation (count V). Burns filed a motion to dismiss the amended third-party complaint.

Proceeding along a track parallel to Wards, the adjacent tenants filed amended complaints adding Burns as a party defendant. The two counts directed against Burns sought recovery under an ordinary negligence theory and under the doctrine of *res ipsa loquitur*. In their amended complaints, the adjacent tenants alleged, *inter alia*, that Burns assumed a duty toward them to exercise due care and caution in its installation, service and maintenance of fire protection equipment and warning systems in Wards' portion of the warehouse. The adjacent tenants further alleged that Burns' negligent breach of these duties proximately caused the destruction of their property by the fire. Burns moved to dismiss the amended complaint, asserting that the adjacent tenants were seeking recovery in tort for purely economic loss which is not permitted under present Illinois law. Burns further alleged in its motion that it owed no duty to the adjacent tenants as a result of its contract with Wards.

On May 17, 1983, following a lengthy hearing, the trial court dismissed with prejudice the adjacent tenants' actions against Burns on the ground that their loss was purely economic and, thus, not recoverable in tort under *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 435 N.E.2d 443. The court found there was no need to resolve Burns' assertion that it owed no duty to the adjacent tenants. The adjacent tenants appealed the dismissal under Docket No. 83—1747.

On June 14, 1983, the trial court issued a written opinion dismissing with prejudice counts II, III and IV of Wards' amended third-party complaint against Burns (counts I and V are still pending below). The court dismissed count II based on Wards' inability to restore to Burns any consideration previously provided by it. In dismissing counts III and IV, which sought contribution, the trial court reasoned that since it previously ruled that Burns was not "subject to liability in tort" to the adjacent tenants, Wards could not maintain a cause of

action for contribution against Burns. Wards filed an appeal from the dismissal of counts III and IV (Docket No. 83—2328), and filed a motion to reconsider and vacate the dismissal of count II. In a written opinion filed on September 12, 1983, the trial court denied the motion for reconsideration on the ground that Wards' remedy at law is adequate. Wards appealed the denial of its motion for reconsideration and dismissal with prejudice of count II of the amended third-party complaint (Docket No. 83—2225).

Hence, we are now asked to review the propriety of the following: (1) the dismissal of the actions in tort brought by the adjacent tenants against Burns; and (2) the dismissal of counts II, III and IV of Wards' amended third-party complaint against Burns.

## I

### (A)

We will first address the adjacent tenants' contention that the trial court improperly dismissed their tort actions against Burns. The trial court held that the tenants failed to state a cause of action in tort because their loss was purely economic loss which is not recoverable in tort.

■ We believe it was error to dismiss the tenants' action against Burns. First, recovery for the loss incurred was not barred by the economic loss doctrine. Our supreme court, in adopting this doctrine, recognized that when defects in a product are "of a qualitative nature and the harm relates to the consumer's expectation that a product is of a particular quality, *** contract, rather than tort, law provides the appropriate set of rules for recovery." (*Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 88, 435 N.E.2d 443.) Economic loss has been defined as damages for inadequate value, costs of repair and replacement of the defective product or consequent loss of profits. (*Foxcroft Townhome Owners Association v. Hoffman Rosner Corp.* (1983), 96 Ill. 2d 150, 156, 449 N.E.2d 125; *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 82-83, 435 N.E.2d 443.) Excluded from the definition of economic loss are personal injury or damage to property other than the defective product. (91 Ill. 2d 69, 82-83.) Furthermore, even where there is damage only to the defective product, such damage is not economic loss where the defect results from a sudden and dangerous occurrence rather than deterioration. 91 Ill. 2d 69, 86; *Vaughn v. General Motors Corp.* (1984), 102 Ill. 2d 431, 466 N.E.2d 195.

In the case before us, the loss sustained was clearly outside the

realm of economic loss. Here, not only was there extensive damage to property other than the defective product, but such damage resulted from a sudden and dangerous occurrence. Specifically, the adjacent tenants allege in their complaints that their loss resulted when a small, containable fire, which started in Wards' premises, was not extinguished due to the negligence of Burns. Their complaints allege further that the fire thereby developed into a "sudden and calamitous" conflagration spreading to the adjacent tenants' premises. An analogous failure to contain a fire was recognized as a sudden and dangerous occurrence in *Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.* (3d Cir. 1981), 652 F.2d 1165.

Briefly, we note that the economic loss doctrine also does not bar recovery here because there were no commercial dealings between Burns and the adjacent tenants. As this court stated in *Ferentchak v. Village of Frankfort* (1984), 121 Ill. App. 3d 599, 606, 459 N.E.2d 1085:

> "We read *Moorman* and subsequent cases to establish that economic losses are not recoverable in tort against a defendant where the injuries caused by that defendant relate directly to plaintiff's reasonable commercial expectations respecting the defendant's actions *and* [emphasis in the original] where plaintiff has or had appropriate and adequate contract or warranty actions as against the defendant for such harm. \*\*\* *However, the same economic losses are recoverable in tort, as against defendants who by their own negligence, as measured by traditional tort analysis, have caused the injuries and against whom no contract or warranty recovery is available.* As to these defendants, when unconnected with the contract-warranty defendant, the harm caused by them is not related to the plaintiff's commercial expectations, but to traditional societal expectations and conduct." (Emphasis added.)

In the instant case, the adjacent tenants are not in privity of contract with Burns, nor even within the chain of distribution, and thus there are no contractual nor warranty remedies available to the tenants. Rather, an action in tort is their sole remedy against Burns.

Burns urges that it is not liable to the adjacent tenants because the tenants are able to maintain an action against Wards. A similar argument was rejected in *Ferentchak.* There, we held that the economic loss doctrine did not bar tort recovery against an allegedly negligent architect merely because the plaintiffs might have an adequate contract remedy against the builder. Similarly, in this case the fact that the tenants may have a remedy against Wards does not preclude

them from pursuing a tort action against Burns.

(B)

Having determined above that the economic loss doctrine does not bar recovery by the adjacent tenants, we next turn to the issue of duty. Burns maintains it owed no duty to the adjacent tenants since it contracted only with Wards. We disagree.

The adjacent tenants allege in their complaints that Burns contracted with Wards to install, maintain and monitor certain fire protection equipment and fire warning systems in Wards' warehouse in Bensenville. They additionally allege they stored their goods in the adjoining section of the warehouse in reliance upon Burns' discharge of its contractual undertaking with Wards. Finally, the adjacent tenants allege that Burns breached its duty by providing defective equipment which failed to function properly during the fire, and by delaying in notifying the local fire department when a fire signal was finally transmitted to the Burns' central station.

■■ These allegations, which must be taken as true for purposes of the motion to dismiss (*Burks Drywall, Inc. v. Washington Bank & Trust Co.* (1982), 110 Ill. App. 3d 569, 442 N.E.2d 648), are sufficient to establish the existence of a duty owed by Burns to the adjacent tenants under the Restatement (Second) of Torts. This section, as adopted by our supreme court (*Pippin v. Chicago Housing Authority* (1979), 78 Ill. 2d 204, 399 N.E.2d 596), provides:

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking." (Restatement (Second) of Torts sec. 324A (1965).)

The adjacent tenants urge that the present case falls within subsections (b) and (c) of section 324A. We do not believe subsection (b) is satisfied here because the adjacent tenants have not alleged a duty on the part of Wards to provide protection to them. We do find, however, that a duty arises under subparagraph (c), which sets up reliance upon

the undertaking as a basis for imposing liability. The adjacent tenants have alleged they relied upon Burns' contractual undertaking to provide adequate fire protection and warning services, thereby giving rise to a duty under subparagraph (c). However, even if such reliance by the adjacent tenants was not reasonably justified, the reliance necessary under subsection (c) is provided here by Wards. Subsection (c) speaks to reliance by "the other" (Wards) or the third person (adjacent tenants). Wards, by contracting with Burns for the fire safety program, necessarily relied upon Burns to perform its undertaking. See *Pippin v. Chicago Housing Authority* (1979), 78 Ill. 2d 204, 399 N.E.2d 596.

Burns should have recognized that the undertaking of its contractual obligations was necessary for the protection of the third party, the adjacent tenants, given the circumstances here where the parties shared a common facility and Wards was storing flammable materials on its premises. It was highly foreseeable that a fire on Wards' premises, if not timely detected, would destroy the entire warehouse and not merely Wards' portion. In parallel circumstances, courts have repeatedly recognized the reasonable foreseeability of harm to other persons present at or sharing a single facility with one to whom a contractual duty is owed. (See, *e.g., Evans Cabinet Corp. v. "Automatic" Sprinkler Corp.* (1983), 167 G. App. 502, 306 S.E.2d 750; *Haragon v. Union Oil Co.* (D. Alaska 1970), 312 F. Supp. 1392.) The fact that the adjacent tenants were not a party to the Burns' contract does not negate the existence of a duty owed to them. See *Rozny v. Marnul* (1969), 43 Ill. 2d 54, 250 N.E.2d 656; *Nelson v. Union Wire Rope Corp.* (1964), 31 Ill. 2d 69, 199 N.E.2d 769.

Burns maintains that extending a duty to third parties such as the tenants would be too heavy a burden in that it would result in unlimited financial liability for Burns and other alarm suppliers in the future. In support of this argument, Burns erroneously relies upon cases where courts have upheld limitation-of-liability provisions in burglar alarm contracts where the litigation was between the contracting parties only. (See *First Financial Insurance Co. v. Purolator Security, Inc.* (1979), 69 Ill. App. 3d 413, 388 N.E.2d 17; *Pickfisheries, Inc. v. Burns Electronic Security Services, Inc.* (1976), 35 Ill. App. 3d 467, 342 N.E.2d 105.) In these cases the court was not espousing general rules of public policy but discussed only whether the limitation provisions could be circumvented by contracting parties on the basis that they were unconscionable. Those cases are to be distinguished from the instant case, where there was no commercial relationship between the adjacent tenants and Burns and therefore no contractual

assignment of the risks or agreement to exculpate Burns for its negligence.

We are convinced that, contrary to Burns' position, public policy principles support the imposition of a duty to the adjacent tenants. Although Burns claims that the "burden" of being held responsible for its negligence would be too great, in reality the only "burden" on Burns is to exercise reasonable care in fulfilling its undertaking. Imposing a duty in this instance provides the necessary incentive for Burns and others who supply and maintain alarm systems to use reasonable care in the future.

### (C)

Burns additionally contends that it did not proximately cause the adjacent tenants' loss because it did not start the fire. Burns reasons that even if the fire alarm system had functioned correctly, the fire still would have occurred, and therefore it is not liable to the tenants. This argument has no merit.

■ The issue of proximate cause generally presents a question to be determined by the trier of fact. (*Kerns v. Engelke* (1977), 54 Ill. App. 3d 323, 332-33, 369 N.E.2d 1284, *aff'd in part, rev'd in part* (1978), 76 Ill. 2d 154.) "Proximate cause" is a term of art encompassing the distinct concepts of cause in fact and legal cause; once it is established from an analysis of the facts that the defendant's conduct was a cause in fact of plaintiff's injury, the next question is whether the defendant should be legally responsible for what he caused. (*Kerns v. Engelke* (1977), 54 Ill. App. 3d 323, 332.) Under the classic "but for" test of cause in fact, the plaintiff need only show that 'but for" the defendant's conduct, the injury to plaintiff would not have occurred. (54 Ill. App. 3d 323, 333.) In the present case, the adjacent tenants allege in their complaints that "but for" the negligence of Burns, what began as a small containable fire would not have grown into a dangerous conflagration endangering plaintiffs and their property. We believe that a jury could reasonably conclude that the "but for" test is satisfied with regard to Burns, in that it is more probable than not that, had Burns' alarm and sprinkler systems functioned properly, the fire would not have spread to the adjacent tenants' premises.

The next prong of the proximate cause analysis concerns whether Burns should be held legally responsible for plaintiff's injuries. A defendant is legally responsible for all of the "natural and probable" results of his actions—that is, for all of the consequences which an ordinary prudent person ought to have foreseen as likely to occur.

(*Kerns v. Engelke* (1977), 54 Ill. App. 3d 323, 334, 369 N.E.2d 1284, *aff'd in part, rev'd in part* (1978), 76 Ill. 2d 154.) Here, a jury could find that it was foreseeable that a fire in Wards' warehouse would spread if Burns' system failed to function properly and detect the fire in a timely manner. We note there is no reason why a party who manufactures or supplies a device designed to prevent damage emanating from another source should not be held legally responsible if, as a result of the party's own negligence, the device fails to prevent the anticipated harm. (*Haragon v. Union Oil Co.* (D. Alaska 1970), 312 F. Supp. 1392, 1395.) The failure of safety mechanisms designed to prevent and control a potentially dangerous occurrence is as, if not more, hazardous than the creation of the situation itself.

Accordingly, for the reasons set forth above, we hold that the adjacent tenants stated a cause of action in tort against Burns and that it was therefore error to dismiss their actions.

## II

### (A)

■ The next matter for our review is the trial court's dismissal of counts II, III and IV of Wards' amended third-party complaint against Burns. We first find that the trial court properly dismissed count II, which attempts to plead a cause of action for rescission. In seeking rescission, Wards is attempting to recover for its own losses, that being the money paid to Burns under their contract. Under Illinois law, however, a party cannot maintain a claim for its own losses in a third-party complaint. (*Filippino v. Bailitz* (1979), 73 Ill. App. 3d 389, 392, 392 N.E.2d 23.) In *Bailitz,* we stated that third-party litigation "cannot be used to maintain an entirely separate and independent claim against a third party, even if it arises out of the same general set of facts as the main claim." (73 Ill. App. 3d 389, 392.) Here, the claim for rescission contained in count II was separate from, and independent of the outcome of, the main claim brought against Wards by the adjacent tenants. As such, the claim for rescission was not a sufficient basis upon which to sustain a third-party action, and count II was properly dismissed.

■ Notwithstanding the above pleading error, Wards nevertheless has no action for rescission. The relief of rescission sought here by Wards is equitable in nature. (*Corbett v. Devon Bank* (1973), 12 Ill. App. 3d 559, 299 N.E.2d 521.) It is axiomatic that it is not error for the trial court to deny equitable relief when an adequate remedy at law exists. (*Aldens, Inc. v. Rosewall* (1979), 71 Ill. App. 3d 754, 757,

390 N.E.2d 476.) In the case before us, an adequate remedy at law exists. Wards' legal remedy is set forth in paragraph 10 of its contract with Burns. This paragraph provides that in the event that Burns is liable for any injury suffered by Wards, the damages that Burns must pay are limited to $250 or 10% of the service contract charge, whichever is greater. Similar limitation of damages clauses have been upheld by Illinois courts. (*Fireman's Fund American Insurance Cos. v. Burns Electronic Security Services, Inc.* (1980), 93 Ill. App. 3d 298, 417 N.E.2d 131, *appeal denied* (1982), 88 Ill. 2d 550; *First Financial Insurance Co. v. Purolator Security, Inc.* (1979), 69 Ill. App. 3d 413, 388 N.E.2d 17.) Hence, paragraph 10 clearly and unambiguously establishes the intent of Burns and Wards regarding the failure of the Burns' system to operate properly.

Wards urges that the contract damages provided for in paragraph 10 are not adequate because they are not as "complete" as those available to it if the contract were rescinded, and it cites *Bio-Medical Laboratories, Inc. v. Trainor* (1977), 68 Ill. 2d 540, 370 N.E.2d 223, and *K.F.K. Corp. v. American Continental Homes, Inc.* (1975), 31 Ill. App. 3d 1017, 355 N.E.2d 156. These two cases stand for the proposition that in order to deprive equity of its power to grant *injunctive* relief, the remedy at law must be clear, complete and as practicable and efficient as the equitable remedy. In both cases, injunctions were issued to preserve the status quo of the parties. In distinction, in the case before us, Wards is not seeking the equitable powers of the court to grant an injunction to preserve the status quo. Rather, Wards is seeking to rescind an agreement which was voluntarily entered into because it is unhappy with its contractual remedy. It is well settled that it is not the duty nor function of this court to grant rescission of a contract voluntarily entered into between competent parties merely because such an agreement may later be thought unwise or improvident. (*Heckmann v. Mid States Development Co.* (1965), 60 Ill. App. 2d 113, 207 N.E.2d 715; *Diedrich v. Northern Illinois Publishing Co.* (1976), 39 Ill. App. 3d 851, 350 N.E.2d 857.) Accordingly, we refuse to grant Wards rescission of the Burns contract.

### (B)

The trial court erred in dismissing counts III and IV of Wards' amended third-party complaint. In these two counts, premised respectively on theories of negligence and wilful and wanton misconduct, Wards seeks contribution from Burns. Wards maintains that if it is held liable to the plaintiff adjacent tenants for the loss they incurred, then Wards is entitled to pursue a claim against Burns under the Con-

tribution Act (Ill. Rev. Stat. 1983, ch. 70, par. 301 *et seq.*). The Act provides that where two or more persons are *"subject to liability in tort* arising out of the same injury to person or property, *** there is a right of contribution among them." (Emphasis added.) Ill. Rev. Stat. 1983, ch. 70, par. 302(a).

■ The threshold question raised here by the parties is whether Burns is a person "subject to liability in tort" under the contribution statute. The trial court ruled that Burns was not, reasoning that the loss incurred by the plaintiffs constitutes economic loss which is not recoverable in tort. We determined above, however, that the economic loss doctrine does not pose an obstacle to recovery in this case. We further examined the parties' remaining arguments pertaining to duty and proximate cause, and found that the plaintiff adjacent tenants sufficiently stated a cause of action in tort against Burns. It is not necessary to again review these arguments at this time, since the allegations of negligence directed against Burns in Wards' amended third-party complaint are similar, in pertinent part, to those directed against Burns in the adjacent tenants' amended complaint. Consequently, given our findings above, we conclude that Burns indeed is a party "subject to liability in tort" under the Contribution Act.

Burns argues that Wards is prevented from seeking contribution because paragraph 10 of their contract provides that Burns "shall be exempt from liability for loss or damage due directly or indirectly to occurrences or consequences therefrom, which the service is designed to detect or avert." Burns asserts that since this clause precludes Wards from directly suing Burns in tort, allowing Wards to sue in tort indirectly via a contribution claim would enable Wards to circumvent its contractual obligations.

The above argument must fail. The fact that Wards may not directly maintain a tort action against Burns does not prohibit a claim for contribution. The intent underlying the passage of the Contribution Act is to create a separate right of restitution in the party seeking contribution, which right is not dependent on any other rights the claimant may have with respect to the party from whom contribution is being sought. (See Comment, *Comparative Contribution: The Legislative Enactment of the Skinner Doctrine,* 14 J. Mar. L. Rev. 173, 193 (1980), quoting legislative history behind Senate Bill 308 published by the Chicago Bar Association's Civil Practice Committee, at 2.) In recognition of this legislative intent, Illinois courts have held that a plaintiff's inability to maintain a direct tort action against a negligent party will not necessarily protect the negligent party from a third-party contribution action. (*Doyle v. Rhodes* (1984), 101 Ill. 2d 1,

461 N.E.2d 382; *Larson v. Buschkamp* (1982), 105 Ill. App. 3d 965, 435 N.E.2d 221; *Wirth v. City of Highland Park* (1981), 102 Ill. App. 3d 1074, 430 N.E.2d 236.) As our supreme court recently stated, "[T]he intent of the contribution statute was to reach anyone who is culpable regardless of whether they have been immunized from a direct tort action by some special defense or privilege." (*Doyle v. Rhodes* (1984), 101 Ill. 2d 1, 9, 461 N.E.2d 382.) For this court to now allow Burns to use the limitation-of-damages clause as a shield to a contribution claim would be inconsistent with the contribution statute's desirable policy of equitably distributing the loss among culpable parties. We therefore conclude that Wards is not precluded from pursuing a cause of action for contribution against Burns, and counts III and IV of its amended third-party complaint therefore should not have been dismissed.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed in part, reversed in part, and remanded.

Affirmed in part; reversed in part; and remanded.

GOLDBERG and CAMPBELL, JJ., concur.*

---

*This opinion was adopted as the opinion of the court prior to the retirement of Justice Goldberg.