(No. 61373.—

SCOTT & FETZER COMPANY, Appellee, v. MONT-GOMERY WARD & COMPANY *et al.*, Appellees (Burns Electronic Security Services, Inc., Appellant).

*Opinion filed May 21, 1986.*

SIMON, J., took no part.

Sandra Young, Edward C. Purcell and D. Timothy McVey, of Purcell & Wardrope, Chartered, of Chicago, for appellant.

Robert A. Downing, Gerald L. Angst and David F. Graham, of Sidley & Austin, and Christopher J. Michas, all of Chicago, for appellee Montgomery Ward & Company.

Clausen, Miller, Gorman, Caffrey & Witous, P.C., of Chicago (James T. Ferrini, Thomas A. McDonald, Thomas J. Skeffington and Lisa Marco Kouba, of counsel), for appellee Scott & Fetzer Company *et al.*

Roy W. Sears and David A. Ullrich, of Eckhart, McSwain, Hassell & Silliman, of Chicago, and Jane Leifer, of New York, New York, for *amicus curiae* American District Telegraph Company.

JUSTICE RYAN delivered the opinion of the court:

A fire originated in the portion of a large warehouse which was partially occupied by Montgomery Ward & Company, Inc. (Wards). Pursuant to an agreement with Wards, Burns Electronic Security Services, Inc. (Burns), had installed and maintained fire-warning systems in this portion of the building. This equipment allegedly malfunctioned, and the fire spread throughout the ware-

house, causing extensive damage to Wards' property and to the property of the tenants of the remaining portions of the building. The briefs speak of losses totaling "millions of dollars." These tenants brought actions in tort for their losses originally against Wards and, by later amendments, included Burns as a party defendant. After the filing of the original complaints, Wards filed third-party actions against Burns for rescission and for contribution. The trial court dismissed the tenants' actions against Burns, ruling that recovery was barred by the rule against recovery in tort for purely economic loss. The counts of Wards' third-party complaints seeking contribution and rescission were also dismissed. The appellate court reversed the order dismissing the tenants' suits and the order dismissing Wards' actions for contribution. (129 Ill. App. 3d 1011.) Pursuant to Rule 315 (94 Ill. 2d R. 315), we granted Burns leave to appeal.

The record shows that Wards leased warehouse space at 1010 Foster Avenue in Bensenville. The space constituted a portion of a large storage facility covering 1010 to 1020 Foster Avenue. The remaining portion was later leased by General Warehouse & Transportation Company, which subleased to the plaintiffs in this case. These plaintiffs are hereinafter referred to as "adjacent tenants." These adjacent tenants utilized their portions of the building as storage for valuable stock, inventory and supplies. Wards stored flammable materials at the facility and was obligated under the terms of its lease to equip its portion of the premises with appropriate safety devices.

Pursuant to its lease obligations, Wards contracted with Burns for the installation and maintenance of a "central station protective signaling system" and a "waterflow alarm system" at 1010 Foster Avenue. Burns further agreed to transmit to the municipal fire department all fire-alarm signals received from the system or

to investigate the cause of such signals. Paragraph 10 of the contract contained the following exculpatory provisions:

"It is understood that the contractor [Burns] is not an insurer *** and the amounts payable to [Burns] hereunder are based upon the value of services and the scope of liability as herein set forth, and are unrelated to the value of [Wards'] property or the property of others located in [Wards'] premises. [Wards] does not desire this contract to provide for full liability of [Burns] and agrees that [Burns] shall be exempt from liability for loss or damage due directly or indirectly to occurrences, or consequences therefrom, which the service is designed to detect or avert; that if [Burns] should be found liable for loss or damage due to a failure of the system in any respect, its liability shall be limited to a sum equal to 10% of the annual service charge or $250.00, whichever is the greater, and that the provisions of this paragraph shall apply if loss or damage, irrespective of cause or origin, results directly or indirectly to person or property from performance or nonperformance of obligations imposed by this contract or from negligence, active or otherwise, of [Burns], its agents or employees."

The initial annual service charge under the agreement was $1,358.

This contract was in force when a fire began on Wards' premises. Wards alleged that Burns' systems failed to function as intended, that Burns failed to transmit to the local fire department all of the alarm signals that were received from the premises, and that as a result, what began as a small, containable fire turned into a dangerous conflagration which spread to the portions of the warehouse occupied by the adjacent tenants. The warehouse was totally destroyed, and the adjacent tenants suffered losses to personal property which, as noted earlier, the briefs speak of as totaling millions of dollars.

The adjacent tenants filed suit against Wards and the

La Salle National Bank, the legal titleholder of the warehouse, to recover for their property damage and business losses. The complaints asserted that due to various negligent acts or omissions the fire started in Wards' portion of the warehouse and spread throughout the building, destroying the adjacent tenants' products and inventory.

In response to the complaints filed against it, Wards filed five identical third-party actions against Burns, alleging that Burns had negligently performed its contractual duties. Wards' amended third-party complaint attempted to state causes of action for breach of contract (count I), rescission (count II), contribution based on Burns' alleged negligence (count III), contribution based on Burns' alleged wilful and wanton behavior (count IV), and fraudulent misrepresentation (count V). Counts I and V are still pending in the trial court.

The adjacent tenants then filed amended complaints adding Burns as a party defendant. Each of the adjacent tenants filed counts seeking recovery based on Burns' alleged negligence and on the doctrine of *res ipsa loquitur.* The amended complaints alleged, *inter alia,* that the adjacent tenants relied upon Burns to properly complete its contract with Wards, and that in entering into the contract with Wards, Burns voluntarily assumed a duty towards both Wards and the adjacent tenants to exercise reasonable care and caution in the installation, maintenance, repair, service, monitoring, and operation of the warning systems. The adjacent tenants maintained that Burns' negligent breach of these duties proximately caused their losses.

Burns moved to dismiss the adjacent tenants' complaints and Wards' third-party complaints.

The adjacent tenants' suits were consolidated, and a hearing was held on the motion to dismiss. The trial court found that the adjacent tenants' losses were purely

economic, and that they could not recover in tort under *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69. The court did not address the duty or proximate-cause issues. The counts against Burns were dismissed with prejudice, and the adjacent tenants appealed.

The court also issued a written order dismissing with prejudice counts II, III, and IV of Wards' third-party actions against Burns. The trial court's dismissal of count II, which sought rescission, was affirmed by the appellate court. That issue is not involved in this appeal. Counts III and IV were dismissed because the court had previously ruled that Burns was not liable in tort to the adjacent tenants, and that, thus, Wards could not seek contribution. Wards appealed the dismissals.

The adjacent tenants' and Wards' appeals were consolidated, and the appellate court reversed the dismissal of the adjacent tenants' action and the dismissal of counts III and IV of Wards' third-party action. (129 Ill. App. 3d 1011.) The dismissal of count II of Wards' third-party complaint was affirmed. 129 Ill. App. 3d 1011, 1021-22.

The appellate court found that the economic-loss doctrine did not apply to the adjacent tenants' action. (129 Ill. App. 3d 1011, 1016-18.) The court also determined that the allegations of the adjacent tenants' complaints were sufficient to establish that Burns owed a duty to the adjacent tenants based upon section 324A(c) of the Restatement (Second) of Torts (1965) (129 Ill. App. 3d 1011, 1018) and that a jury could reasonably find that Burns' negligence was the proximate cause of their losses (129 Ill. App. 3d 1011, 1020-21).

In reversing the dismissal of counts III and IV of Wards' third-party complaint, the appellate court reasoned that since the economic-loss doctrine did not bar the adjacent tenants' recovery in tort, Burns was a .

party "subject to liability in tort" under "An Act in relation to contribution among joint tortfeasors" (Ill. Rev. Stat. 1983, ch. 70, par. 301 *et seq.*) (hereinafter cited as the Contribution Act). (129 Ill. App. 3d 1011, 1022-23.) The court also found that the exculpatory provisions of the contract did not prevent Wards from pursuing a claim for contribution. 129 Ill. App. 3d 1011, 1023-24.

We note initially that the order of dismissal at issue was entered upon allowance of Burns' motion to dismiss; therefore, all facts properly pleaded in the adjacent tenants' complaints and Wards' third-party complaint must be taken as true. See *Kendall v. Kendall* (1978), 71 Ill. 2d 374, 375.

Nevertheless, Burns maintains that the decision of the circuit court of Cook County should be affirmed. Burns maintains that all that is alleged in the adjacent tenants' complaints is that their losses originated from a qualitative defect in the functioning of the alarm systems and that the resulting harm was to their consumer expectations regarding the systems' function. Therefore, Burns argues that the economic-loss doctrine, set forth in *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 88, prohibits this action in tort.

We cannot agree that *Moorman* requires a dismissal of the adjacent tenants' actions. In *Moorman* we noted that economic loss had been defined "as 'damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits—*without any claim of personal injury or damage to other property* ***' [citation] ***." (Emphasis added.) (91 Ill. 2d 69, 82; *Foxcroft Townhome Owners Association v. Hoffman Rosner Corp.* (1983), 96 Ill. 2d 150, 156.) We recognized in *Moorman* that the dividing line between property damage and economic loss depends on the nature of the defect and the manner in which the damage occurred. (91 Ill. 2d 69, 82.) We held in that case that

"[w]hen the defect is of a qualitative nature and the harm relates to the consumer's expectation that a product is of a particular quality so that it is fit for ordinary use, contract *** law provides the appropriate set of rules for recovery. [Citation.]" (91 Ill. 2d 69, 88.) We also stated that "[t]ort theory is appropriately suited for personal injury or property damage resulting from a sudden or dangerous occurrence ***." 91 Ill. 2d 69, 86; *Vaughn v. General Motors Corp.* (1984), 102 Ill. 2d 431, 436.

In the instant case, the adjacent tenants' losses are not economic. They are seeking damages for the loss of property other than the defective product. The complaints pray for damages resulting from the loss of audio equipment, paint sprayers, speakers, inventory, supplies, and stock. In addition, it was specifically alleged that due to Burns' negligence, a *sudden* and *dangerous* conflagration destroyed their property. Clearly, these alleged losses fall outside the definition of economic loss established in *Moorman* and within the parameters of losses properly recoverable under tort theory.

Burns maintains that even if the adjacent tenants' losses are recoverable in tort, this action should be dismissed because the appellate court erred by imposing a legal duty on Burns to guard against these losses.

Burns argues that a legal duty may only be imposed after a court has taken into account "[t]he likelihood of injury, the magnitude of the burden of guarding against it and the consequences of placing that burden upon the defendant ***" (*Lance v. Senior* (1967), 36 Ill. 2d 516, 518). Burns maintains that (1) the appellate court ignored these factors, and (2) their proper consideration does not justify the imposition of a legal duty in this case.

We cannot agree that the appellate court ignored the appropriate policy and social factors. The court found the adjacent tenants' losses to be "highly foreseeable"

under the circumstances (129 Ill. App. 3d 1011, 1019), and characterized the magnitude of the burden of guarding against such losses as being no more than the exercise of due care (129 Ill. App. 3d 1011, 1019-20). The court noted that one possible consequence of placing this burden on alarm systems contractors would be their future exercise of reasonable care in maintaining their systems. (129 Ill. App. 3d 1011, 1020.) The appellate court clearly considered all three factors set out in *Lance*.

Burns relies heavily on the "magnitude of the burden" component of duty as discussed in *Lance*. Burns confuses "magnitude of the burden" with magnitude of exposure. The burden the appellate court decision placed on Burns does not require special care, surveillance or effort, which was a consideration in *Lance*. In that case the plaintiff was a 9-year-old boy who suffered from hemophilia. He swallowed a needle while at the defendant's home. The complaint charged that the defendant negligently permitted the plaintiff to play with a needle. The court said, "the burden sought to be imposed upon the defendants is a heavy one, which would require intimate and constant surveillance." (*Lance v. Senior* (1967), 36 Ill. 2d 516, 519.) The fact that Burns' duty to the adjacent tenants, as found by the appellate court, exposes Burns to possible liability for substantial damages does not impose upon Burns an extraordinary burden of due care in the maintainence of the alarm system.

Nor can we agree that proper consideration of the factors of duty set out in *Lance* would relieve contractors such as Burns from the duty of exercising due care to prevent the anticipated harm to a party with whom they are not in privity. This is not a warranty action but an action in tort. In a case where inspections relating to safety were involved, this court recognized that "[a] defendant's liability for the negligent performance of its undertaking *** extends *** to such persons as defend-

ant could reasonably have foreseen would be endangered as the result of negligent performance. *** [E]very person owes to all others a duty to exercise ordinary care to guard against injury which naturally flows as a reasonably probable and foreseeable consequence of his act, and *** such duty does not depend upon contract *** but extends to remote and unknown persons. [Citations.]" *Nelson v. Union Wire Rope Corp.* (1964), 31 Ill. 2d 69, 86.

In *Pippin v. Chicago Housing Authority* (1979), 78 Ill. 2d 204, this court impliedly adopted section 324A of the Restatement (Second) of Torts(1965), which states:

> "One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> (a) his failure to exercise reasonable care increases the risk of such harm, or
>
> (b) he has undertaken to perform a duty owed by the other to the third person, or
>
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking."

We noted in *Pippin* that the rationale for subsection (c) was expressed in the comments as follows:

> " 'Where the reliance of the other, or of the third person, has induced him to forego other remedies or precautions against such a risk, the harm results from the negligence as fully as if the actor had created the risk.' (Restatement (Second) of Torts sec. 324A, comment *e* (1965).)" *Pippin v. Chicago Housing Authority* (1979), 78 Ill. 2d 204, 211.

Wards contracted with Burns for the installation and maintenance of a "central station protective signaling system" and a "waterflow alarm system." As noted in *Pippin*, by entering into this agreement Wards, "as a matter of law, relied upon [Burns] to perform its under-

taking." (*Pippin v. Chicago Housing Authority* (1979), 78 Ill. 2d 204, 211.) Under subsection (c) it is sufficient to create the duty for Wards to have relied upon the undertaking by Burns. It was not necessary to establish that there was reliance by the third persons (adjacent tenants). However, it is specially alleged in the second amended complaint that the plaintiffs (adjacent tenants) and each of them relied upon the undertaking by Burns. Thus, the allegations of the plaintiffs have "satisfied the reliance requirement of section 324A(c), so as to give rise to a duty" owed by Burns to the adjacent tenants. 78 Ill. 2d 204, 211.

The exculpatory clause contained in Burns' contract with Wards does not affect Burns' duty to the adjacent tenants. Furthermore, it does not explicitly negate its existence. (See *Berwind Corp. v. Litton Industries, Inc.* (7th Cir. 1976), 532 F.2d 1, 4.) In *Westinghouse Electric Elevator Co. v. LaSalle Monroe Building Corp.* (1946), 395 Ill. 429, 433, the court said: "[A]n indemnity contract will not be construed as indemnifying one against his own negligence, unless such a construction is required by clear and explicit language of the contract, [citations] or such intention is expressed in unequivocal terms." The exculpatory clause in Burns' contract with Wards, which we have set out earlier in this opinion, may be construed to apply to actions in contract or in tort, but it clearly and expressly applies only to Wards and possibly to the property of others located on Wards' premises. The clear and explicit language of the contract does not require that it be construed as barring or limiting the rights of the adjacent tenants, nor do we find such intention expressed in unequivocal terms. We therefore find that the rationale of *Westinghouse* requires that the exculpatory clause of the contract be construed as not being applicable to the adjacent tenants. In *Allendale Mutual Insurance Co. v. Leaseway Warehouse, Inc.*

(N.D. Ill. 1985), 624 F. Supp. 637, a case with similar facts which reached a seemingly different result, we note that the exculpatory clause, in addition to language similar to that in the clauses in our case, also had the following provisions:

"In the event any person, not a party to this agreement, shall make any claim or file any lawsuit against the contractor for failure of its equipment or service in any respect, subscriber agrees to indemnify, defend and hold contractor harmless from any and all such claims and lawsuits including the payment of all damages, expenses, costs and attorney's fees." 624 F. Supp. 637, 638.

We do not agree with Burns' contention that *Rozny v. Marnul* (1969), 43 Ill. 2d 54, dictates a contrary result in this case. Burns has lifted from *Rozny* the discussion concerning "unlimited and unknown potential responsibility" (43 Ill. 2d 54, 63-65), and urges that this factor dictates that Burns owed no duty to the adjacent tenants. This argument is similar to that which Burns has raised concerning the "magnitude of burden" language of *Lance v. Senior,* which we have previously discussed. *Rozny* and the line of cases it discusses involved different conduct and a different theory of tort liability than are involved in this case. As noted in *Rozny*, the court was there concerned with the scope of defendant's liability using traditional tortious-misrepresentation standards. (43 Ill. 2d 54, 62.) *Rozny* involved a negligently made erroneous certification of a survey and the language relied upon by Burns expressed the court's concern over extending the duty of one who makes an erroneous misrepresentation so as to expose him to "unlimited and unknown potential responsibility." (43 Ill. 2d 54, 65.) However, coupled with that consideration was the concern over the effect of extending the duty to an indeterminate class for an indeterminate time. (43 Ill. 2d 54, 63.) *Rozny* held that the plaintiffs in that case fell

within a class of people who were sufficiently identifiable so that the surveyors' duty extended to them.

In our case, although the potential amount of liability is substantial, the group of people to whom Burns owed the duty of exercising due care did not constitute an unknown or indeterminate class. Although Burns may find comfort from some of the language in *Rozny*, the actual holding of that case does not support its position.

Burns argues that even if a duty was owed to the adjacent tenants, their complaints contain no allegations sufficient to establish that Burns proximately caused their losses. Burns notes that the adjacent tenants do not allege that "but for" some act or omission by Burns the fire would not have started. Burns contends that since acts or omissions on its part were not alleged to be a cause in fact *of the fire*, there can be no finding that such acts or omissions were the legal cause *of the losses*. Burns also contends that any jury verdict finding that it proximately caused the adjacent tenants' losses would be based on mere speculation and conjecture.

The issue of proximate cause is one for the trier of fact. (*Ney v. Yellow Cab Co.* (1954), 2 Ill. 2d 74, 84; *Ray v. Cock Robin, Inc.* (1974), 57 Ill. 2d 19, 23.) If the result is one that an ordinarily prudent person would have foreseen as likely to occur, then the party will be held responsible, even if the precise injury which resulted is not foreseen. (*Lewis v. Stran Steel Corp.* (1974), 57 Ill. 2d 94, 101; *Ney v. Yellow Cab Co.* (1954), 2 Ill. 2d 74, 79; *Neering v. Illinois Central R.R. Co.* (1943), 383 Ill. 366, 380.) Furthermore, where the party owes a duty to exercise due care, it is no bar to liability that the party's acts or omissions did not *create* the source of damage. *Cf. Nelson v. Union Wire Rope Corp.* (1964), 31 Ill. 2d 69 (defendant who voluntarily assumed duty to inspect held liable for damage from falling hoist even though acts did not cause hoist to fall); *Butler v. Pittway Corp.* (1985),

770 F.2d 7 (under New York law damages for injuries proximately caused by product defect are not limited to situation where the defect causes the accident).

Burns has missed the essence of the counts filed against it. The adjacent tenants alleged that "but for" Burns' acts or omissions, the small containable fire which began in Wards' portion of the warehouse would not have spread to engulf the entire building. A jury could find under the pleadings that it is more probable than not that this allegation is true. That finding would satisfy the cause-in-fact element of the proximate-cause issue. (See *Haragan v. Union Oil Co.* (D. Alaska 1970), 312 F. Supp. 1392.) A jury could also reasonably find that it was foreseeable that a small fire in Wards' portion of the building would enlarge and spread if not detected in time by the alarm systems. (*Cf. Doyle v. South Pittsburgh Water Co.* (1964), 414 Pa. 199, 199 A.2d 875 (the failure of a fire-hydrant system was held to be the proximate cause of the destruction of plaintiff's home).) We can find no reason why a contractor such as Burns, who installs and maintains safety devices designed to prevent damage emanating from another source, should not be held legally responsible if the device fails to prevent the anticipated harm.

Nor can we agree that such a finding would be based solely on speculation and conjecture. At this stage of the proceedings we cannot so hold. Such a conclusion must await the evidence. At trial both sides will have the opportunity to present testimony by fire officials and expert witnesses; the jury will not then be left to its imagination.

Burns contends that the appellate court erred in holding that Wards may seek contribution. Burns maintains that because it is not liable in tort to the adjacent tenants, Wards has no right to seek contribution. Burns also argues that the exculpatory clause noted above precludes

Wards' action for contribution.

Section 2 of the Contribution Act (Ill. Rev. Stat. 1983, ch. 70, par. 302) provides "where two or more persons are *subject to liability in tort arising out of the same injury to person or property* \*\*\* there is a right of contribution among them, even though judgment has not been entered against any or all of them." (Emphasis added.) (Ill. Rev. Stat. 1983, ch. 70, par. 302(a).) We have already determined that the adjacent tenants have sufficiently stated a cause of action in tort against Burns. The pleadings also seek to hold Burns and Wards liable for the same injury to the adjacent tenants' property. Burns therefore is a party "subject to liability in tort" under the Contribution Act, and Wards' action is proper under this statute.

The exculpatory provision in Burns' contract does not prevent Wards' action for contribution. Such clauses are not favored (*Hulse v. Midwest Emery Freight System, Inc.* (1973), 12 Ill. App. 3d 316, 318) and are to be strictly construed against the party they benefit (*Valentin v. D.G. Swanson & Co.* (1960), 25 Ill. App. 2d 285, 290), especially when that party was also the draftsman (*Halperin v. Darling & Co.* (1967), 80 Ill. App. 2d 353, 356-57). Such clauses must spell out the intention of the parties with great particularity and will not be construed to defeat a claim which is not explicitly covered by their terms. See *Berwind Corp. v. Litton Industries, Inc.* (7th Cir. 1976), 532 F.2d 1, 4; *Tatar v. Maxon Construction Co.* (1973), 54 Ill. 2d 64, 67.

In this case, the exculpatory language will be most strictly construed against Burns, since it both drafted and benefited from the clause. This language does not explicitly cover third-party actions for contribution. It indicates that the scope of Burns' liability is to be unrelated to the value of Wards' property or the total value of all property on Wards' premises. It also indicates that

Burns shall be exempt from liability for loss caused directly or indirectly by an occurrence the service was designed to avert. We do not find that these provisions are sufficiently particularized to be interpreted as preventing Wards' action for contribution for losses suffered by the adjacent tenants. These provisions indicate only that Burns' liability is limited in actions brought by Wards or some party who had property stored in Wards' portion of the warehouse, and that Burns' liability is limited whether the property is damaged by fire or by smoke, water, or some other indirect cause. We also find that the lack of any language entitling Burns to indemnification from Wards for losses to third parties indicates that the parties intended that Burns would not be shielded from bearing the consequences of any damage to the adjacent tenants.

For the reasons stated above, the judgment of the appellate court is affirmed.

*Judgment affirmed.*

JUSTICE SIMON took no part in the consideration or decision of this case.