THIRD DIVISION
December 15, 2010

No. 1-09-2300

| | | |
|---|---|---|
| ROJAS CONCRETE, INC., | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| FLOOD TESTING LABORATORIES, INC., | ) | Honorable |
| | ) | Jeffrey Lawrence, |
| Defendant-Appellee. | ) | Judge Presiding. |

PRESIDING JUSTICE QUINN delivered the opinion of the court:

Plaintiff, Rojas Concrete, Inc., brought an action alleging that defendant, Flood Testing Laboratories, Inc., had been negligent in testing concrete that plaintiff, a subcontractor, poured for a construction project at the University of Illinois at Chicago (UIC). Plaintiff alleged that as a result of defendant's negligence and negligent misrepresentations, plaintiff's concrete did not meet project specifications and plaintiff suffered monetary losses when UIC required plaintiff to remove the concrete. The circuit court subsequently dismissed plaintiff's complaint where the complaint failed to allege any duty owed by defendant to plaintiff. Plaintiff now appeals. For the following reasons, we affirm the order of the circuit court dismissing plaintiff's complaint for failure to allege that defendant owed a duty to plaintiff.

## I. BACKGROUND

In 2005, UIC commenced a project to build the "UIC Forum," a mixed-use classroom, office and entertainment facility at its campus in Chicago, Illinois. Plaintiff was hired by Goebel Forming, Inc., one of UIC's contractors, to provide the concrete work for the Forum. Plaintiff's work included providing and installing concrete for the floor decks, grade beams, roofs, stairs and other areas of the Forum. The plans for the project specified that lightweight calcium chloride-free concrete was to be used for portions of the Forum.

Defendant contracted with UIC to monitor and test the concrete poured at the Forum construction site to ensure that the concrete conformed to mix design and the formula specified in the project plans. Defendant's contract with UIC provided, under part 1.2, "Inspection and testing services are required to verify compliance with requirements specified or indicated. These services do not relieve Contractor of responsibility for compliance with Contract Document requirements." Defendant's contract with UIC also provided, under article 25.2, "Nothing contained herein shall create a contractual relationship with, or any rights in favor of, any third party, including any Subcontractor."

Plaintiff did not contract with defendant for the testing and inspection of plaintiff's concrete and plaintiff did not participate in defendant's testing and inspection of the concrete. It is customary in the construction industry for the owner of a project, UIC in this case, to hire an independent entity, such as defendant, to monitor and test the concrete used by contractors. Pursuant to defendant's contract with UIC, defendant inspected and tested each load of concrete delivered by plaintiff to determine whether the concrete matched the mix design and formula

specified in the project plans. Defendant then advised plaintiff whether the concrete passed the inspection.

Plaintiff alleged that on several occasions in December 2006 and January 2007, defendant tested and approved concrete that did not conform to the project specifications. Plaintiff alleged that in reliance on defendant's inspection, testing and approval of the concrete formula, plaintiff poured approximately 710 cubic yards of nonconforming concrete. UIC required plaintiff to remove and replace the nonconforming concrete. As a result, plaintiff alleged that it incurred monetary damages in excess of $950,000.

On December 17, 2008, plaintiff filed its two-count complaint, alleging negligence and negligent misrepresentations. Count I alleged that defendant owed plaintiff a duty to use reasonable care to adequately test and inspect the concrete to ensure that it conformed with project specifications and that defendant breached that duty, causing plaintiff to suffer significant damages. Count II alleged that defendant made representations to plaintiff that were false in that certain concrete did not conform to the project specifications and that plaintiff relied on these representations.

On March 13, 2009, defendant filed a motion to dismiss pursuant to sections 2-615 and 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615, 2-619 (West 2008)), arguing that it owed no duty to plaintiff and that plaintiff's claims sought only economic losses that were unrecoverable in tort. The circuit court initially denied defendant's motion, finding that defendant had voluntarily undertaken a duty to plaintiff and that defendant was an information provider, an exception to the economic loss doctrine. Defendant filed a motion to reconsider contending that

1-09-2300

the voluntary undertaking doctrine required plaintiff to suffer personal injury and that the information provider exception to the economic loss doctrine was not applicable in this case. On July 31, 2009, the circuit court granted defendant's motion to reconsider and dismissed plaintiff's complaint with prejudice. In so doing, the circuit court found that defendant owed no duty to plaintiff and that the voluntary undertaking doctrine required physical injury to plaintiff. The circuit court also determined that the information provider exception to the economic loss doctrine was inapplicable where defendant had no duty to plaintiff. Plaintiff now appeals.

## II. ANALYSIS

### A. Standard of Review

A motion to dismiss pursuant to section 2-615 of the Code tests the legal sufficiency of a complaint, whereas a section 2-619 motion admits the legal sufficiency of the complaint, but asserts affirmative matter outside of the complaint which defeats the claim. Solaia Technology, LLC v. Specialty Publishing Co., 221 Ill. 2d 558, 578-79 (2006). Our review of a dismissal under either section of the Code is *de novo*. King v. First Capital Financial Services Corp., 215 Ill. 2d 1, 12 (2005).

To state a claim for negligence, a plaintiff must plead a duty owed by a defendant to that plaintiff, breach of that duty, and injury proximately caused by that breach of duty. Ford v. Round Barn True Value, Inc., 377 Ill. App. 3d 1109, 1113 (2007). To state a claim for negligent misrepresentation, a plaintiff must plead and prove that the defendant owed a duty to the plaintiff to communicate accurate information. Kopley Group V., L.P. v. Sheridan Edgewater Properties, Ltd., 376 Ill. App. 3d 1006, 1017 (2007).

-4-

### B. Whether Defendant Owed Plaintiff a Contractual Duty

Whether a duty of care exists is a question of law to be decided by the court. Eichengreen v. Rollins, Inc., 325 Ill. App. 3d 517, 525-26 (2001). "An allegation of negligence based upon a contractual obligation, although sounding in tort rather than contract, is nonetheless defined by the contract." Eichengreen, 325 Ill. App. 3d at 525. Thus, the scope of duty is determined by the terms of the contract and a defendant's duties will not be expanded beyond the scope of duties required by the contract. Eichengreen, 325 Ill. App. 3d at 525.

In this case, defendant owed no duty to plaintiff under defendant's contract with UIC. First, article 25.2 of the contract specifically stated, "Nothing contained herein shall create a contractual relationship with, or any rights in favor of, any third party, including any Subcontractor." Therefore, defendant's contract with UIC clearly provided that defendant's duties did not extend to third parties, such as plaintiff.

Second, part 1.2 of the contract stated, "Inspection and testing services are required to verify compliance with requirements specified or indicated. These services do not relieve Contractor of responsibility for compliance with Contract Document requirements." Thus, defendant's contract with UIC did not relieve any contractor at the construction site of its duty to comply with the terms of its own separate contract. Plaintiff contracted with Goebel, the contractor for UIC, to provide concrete that complied with project specifications. Defendant's contract to provide monitoring and testing services for UIC did not create a contractual relationship with plaintiff. Therefore, plaintiff has not shown that defendant owed it a duty to inspect, test, or approve plaintiff's concrete before it was poured.

1-09-2300

C.  Whether Defendant Owed Plaintiff a Duty Based on the Parties' Relationship

Plaintiff next asserts that defendant's duty of due care does not depend on privity of contract.  Rather, plaintiff maintains that a construction professional can be held liable for negligently causing another contractor to incur additional expenses to complete a project regardless of whether a contractual relationship exists between the parties.  In support of this argument, plaintiff relies on Normoyle-Berg & Associates, Inc. v. Village of Deer Creek, 39 Ill. App. 3d 744 (1976), and W.H. Lyman Construction Co. v. Village of Gurnee, 84 Ill. App. 3d 28 (1980).  However, we find those cases distinguishable.

In Normoyle-Berg, the plaintiff contracted with the Village of Deer Creek to act as a general contractor on a sewer construction project.  The defendant agreed to serve as the engineer on the project with the duty of supervising the construction.  There was no contract between the plaintiff and the defendant.  The plaintiff general contractor brought an action against the defendant engineer as supervisor of construction alleging that the engineer had acted negligently in failing to have the project properly staked, failing to complete the details of the plans and similar acts which resulted in extra expenses for the plaintiff general contractor.  This court reversed the circuit court's dismissal of the complaint, finding that "a supervising engineer owes a duty to a general contractor to avoid negligently causing extra expenses for the contractor in the completion of a construction project." Normoyle-Berg, 39 Ill. App. 3d at 746.  This court explained that a supervising engineer owes a duty to a general contractor despite the absence of a contractual relationship between the parties:

"A supervising engineer must be held to know that a general contractor will be

-6-

involved in a project and will be directly affected by the conduct of the engineer. This relationship of supervising engineer and general contractor gives rise to a duty of care on the part of each party to the other. Such a duty exists even in the absence of a direct contractual relationship." Normoyle-Berg, 39 Ill. App. 3d at 746.

In W.H. Lyman, this court, relying on Normoyle-Berg, reached a similar result. In W.H. Lyman, the contractor for the Village of Gurnee's sanitary sewer project brought suit against the supervising engineer for the project for the amount the contractor expended over and above the stated amount of his contract with the village. The contractor did not have a contract with the supervising engineer. This court, relying on the holding in Normoyle-Berg, concluded that the relationship between the contractor and supervising engineer gave rise to a duty of care in the engineer's design and administration of the project and that the breach of that duty caused the contractor to incur economic injury. W.H. Lyman, 84 Ill. App. 3d at 39-40.

Here, unlike Normoyle-Berg and W.H. Lyman, there was no supervising engineer and general contractor relationship to give rise to a duty of care. Rather, defendant contracted to provide monitoring and testing services for UIC. Plaintiff contracted with Goebel, UIC's contractor, to provide concrete that complied with project specifications. Plaintiff has not shown that defendant owed it a duty of care within the context of the particular relationship and circumstances of this case. Plaintiff argues on appeal that this court should find that defendant owed plaintiff a duty to exercise due care because it was foreseeable that plaintiff would be affected by defendant's faulty inspection, testing and approval of the concrete and false

representations as to the concrete's conformance with project specifications. However, as defendant notes, plaintiff is raising this argument for the first time on appeal and thus has forfeited the issue. See Vine Street Clinic v. Healthlink, Inc., 222 Ill. 2d 276, 301 (2006) (issues not presented before the trial court are considered forfeited and may not be raised for the first time on appeal).

Plaintiff also argues that defendant's contract with UIC does not negate the existence of a duty owed to plaintiff, where plaintiff was not a party to the contract and plaintiff relied on defendant's testing and approval of its concrete. In support of this argument, plaintiff relies on Scott & Fetzer Co. v. Montgomery Ward & Co., 129 Ill. App. 3d 1011 (1984), which we find distinguishable from the present case.

In Scott & Fetzer, a fire broke out in the Montgomery Ward & Co. (Wards) warehouse, and Wards' fire alarm and sprinkler system allegedly malfunctioned, causing the fire to spread to the adjoining premises of the warehouse. Extensive property damage resulted. The tenants of the adjoining premises brought an action in tort against Burns Electronic Security Services, Inc. (Burns), which supplied, installed and maintained the alarm system. This court held that, whether or not the tenants were a party to the contract between Wards and Burns, the tenants sufficiently established the existence of a duty owed by Burns under the circumstances presented in that case. Scott & Fetzer, 129 Ill. App. 3d at 1019. This court explained that Burns should have recognized that the undertaking of its contractual obligations was necessary for the protection of the third party, the adjacent tenants, where the parties shared a common facility and Wards was storing flammable materials on its premises. This court held, "It was highly foreseeable that a fire on

1-09-2300

Wards' premises, if not timely detected, would destroy the entire warehouse and not merely Wards' portion." Scott & Fetzer, 129 Ill. App. 3d at 1019. This court further explained that "courts have repeatedly recognized the reasonable foreseeability of harm to other persons present at or sharing a single facility with one to whom a contractual duty is owed." Scott & Fetzer, 129 Ill. App. 3d at 1019.

Unlike Scott & Fetzer, the parties in this case were not adjacent tenants. The issue in this case did not involve the reasonable foreseeability of harm to other persons sharing a single facility with one to whom a contractual duty was owed. Rather, as previously noted, plaintiff did not raise the issue of foreseeability before the circuit court and, therefore, the issue is forfeited. See Vine Street Clinic, 222 Ill. 2d at 301.

D. Whether Defendant Owed Plaintiff a Duty Under the Voluntary Undertaking Doctrine

Plaintiff further argues that defendant's contract with UIC did not limit defendant's liability to plaintiff, as a noncontracting party, where defendant owed plaintiff a duty based on the services defendant rendered to plaintiff.

If a person voluntarily agrees to perform a service necessary for the protection of another person or his or her property, a duty may be imposed on the party undertaking the service under the voluntary undertaking doctrine. Bourgonje v. Machev, 362 Ill. App. 3d 984, 995-96 (2005). The voluntary undertaking doctrine is outlined in section 324A of Restatement (Second) of Torts, which provides:

> "One who undertakes, gratuitously or for consideration, to render services

-9-

to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for *physical harm* resulting from his failure to exercise reasonable care to protect his undertaking, if

> (a) his failure to exercise reasonable care increases the risk of such harm, or
>
> (b) he has undertaken to perform a duty owed by the other to the third person, or
>
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking." (Emphasis Added.) Restatement (Second) of Torts §324A (1965).

The Illinois Supreme Court has adopted the Restatement. Frye v. Medicare-Glaser Corp., 153 Ill. 2d 26, 32 (1992). The court has narrowly construed the voluntary undertaking doctrine. Frye, 153 Ill. 2d at 33. Under the doctrine, "one who gratuitously or for consideration renders services to another is subject to liability for *bodily harm* caused to the other by one's failure to exercise due care or ' "such competence and skill as [one] possesses." ' " (Emphasis added.) Frye, 153 Ill. 2d at 32, quoting Cross v. Wells Fargo Alarm Services, 82 Ill. 2d 313, 317 (1980), quoting Nelson v. Union Wire Rope Corp., 31 Ill. 2d 69, 86 (1964).

Here, plaintiff did not allege that any bodily harm occurred as a result of defendant's alleged negligent testing of plaintiff's concrete. Plaintiff has not argued any reason for extending the voluntary undertaking doctrine to what is a purely economic loss. Accordingly, we cannot

1-09-2300

find that defendant owed a duty to plaintiff under the voluntary undertaking doctrine. See <u>Fox Associates, Inc. v. Robert Half International, Inc.</u>, 334 Ill. App. 3d 90, 98 (2002) (voluntary undertaking doctrine did not apply to subject temporary employment agency to liability for economic loss caused by employee supplied by the agency to the plaintiff, where the plaintiff did not allege that bodily injury occurred).

For the above reasons, we affirm the order of the circuit court dismissing plaintiff's complaint with prejudice.

Affirmed.

NEVILLE and MURPHY, JJ., concur.