2024 IL App (1st) 230868

No. 1-23-0868

Order filed September 20, 2024

FIFTH DIVISION

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| SCOTT BOHABOY, | ) | Appeal from the Circuit Court of |
| | ) | Cook County, Law Division. |
| Plaintiff-Appellant, | ) | |
| | ) | No. 2022 L 002528 |
| v. | ) | |
| | ) | Honorable |
| BAXTER INTERNATIONAL, INC., a Delaware | ) | Thomas M. Donnelly, |
| Corporation, and JAMES ATHAS, | ) | Judge, presiding. |
| | ) | |
| Defendants-Appellees. | ) | |

JUSTICE MITCHELL delivered the judgment of the court, with opinion.
Presiding Justice Mikva and Justice Lyle concurred in the judgment and opinion.

**OPINION**

¶ 1     Plaintiff Scott Bohaboy appeals the circuit court's dismissal of his third amended complaint against defendants Baxter International, Inc., and its in-house counsel, James Athas, for negligence pursuant to a voluntary undertaking, legal malpractice, and breach of a duty to warn. The issue on appeal is whether the circuit court erred in dismissing plaintiff's complaint with prejudice because plaintiff alleged at least one viable cause of action in connection with his ultimate termination as a corporate officer at Baxter. For the following reasons, we affirm.

¶ 2                                I. BACKGROUND

¶ 3    Plaintiff served as treasurer for defendant Baxter between 2015 and 2020. As treasurer, plaintiff oversaw and approved Baxter's international financial and accounting practices. In 2019, Baxter began an internal investigation into its foreign currency exchange and accounting practices. The investigation was centered around currency exchange transactions between select foreign subsidiaries of Baxter that were intended to maximize gains or minimize losses on the exchange rates.

¶ 4    The subject currency exchange transactions had been a common operating practice for Baxter's financial division for several years prior to plaintiff's promotion to the role of treasurer. The practice had received routine approval from plaintiff's predecessors, including several current and former chief financial officers, as well as Baxter's external auditor, PricewaterhouseCoopers.

¶ 5    As part of the investigation, plaintiff voluntarily participated in three interviews that lasted for a total of 20 hours. Defendant Athas was present, as well as another of Baxter's in-house counsel, Holland Tahvonen, and a stenographer. Baxter's outside counsel, David Rosenbloom, led the questioning, and when a question was unclear or plaintiff did not understand, Athas or Tahvonen would offer clarification.

¶ 6    After the third interview, plaintiff was called in to speak with Baxter's vice president of human resources, Heather Wechet. Wechet asked plaintiff to "take a few days off," so he would not be subject to internal or external questions regarding Baxter's upcoming earnings call, where the company intended to announce the internal investigation. The following Sunday, Wechet asked plaintiff to meet with her and Athas at Baxter's offices that afternoon. There, plaintiff was placed on administrative leave for the remainder of the investigation, though he was assured his

compensation would not be impacted. At this same meeting, plaintiff learned that the currency exchange transactions were the subject of an investigation by the Securities and Exchange Commission. Plaintiff asked Athas if he should retain independent counsel. Athas told plaintiff he should and that Baxter would pay the attorney fees so long as he cooperated with the investigation.

¶ 7    Athas recommended that plaintiff hire law firm Mayer Brown to represent him. Athas did not disclose to plaintiff that Mayer Brown represented Baxter on other legal matters. Mayer Brown executed a draft engagement agreement which disclosed that Mayer Brown was engaged to represent Baxter in other matters at the time it began its representation of plaintiff. The engagement letter was never signed by Mayer Brown or plaintiff. Nevertheless, plaintiff attended a fourth interview with Rosenbloom, this time represented by three Mayer Brown attorneys. Shortly after this interview, on March 16, 2020, Baxter terminated plaintiff's employment via e-mail.

¶ 8    Mayer Brown continued to represent plaintiff during the subsequent SEC investigation. Plaintiff never received a bill for, nor a description of, the legal services rendered. Mayer Brown sent all invoices directly to Baxter. In 2022, the SEC investigation found that plaintiff had violated securities laws, and plaintiff agreed to a settlement that neither admitted nor denied the allegations against him personally. Baxter was found to have violated securities law relating to the currency exchange transactions and was fined $18 million. As a consequence of the settlement agreement, plaintiff was fined $125,000, and a salary bonus of $191,981 was recouped by Baxter. Since the settlement, plaintiff has been unable to find employment, has suffered financial losses, and has been diagnosed with clinical depression.

¶ 9    Plaintiff filed suit in the circuit court of Cook County against Baxter and Athas. After extensive motion practice and two prior opportunities to replead, plaintiff filed his third amended

complaint making claims for negligence based on voluntary undertaking, legal malpractice, and duty to warn. On defendants' motion, the circuit court dismissed the third amended complaint with prejudice. Plaintiff filed a timely notice of appeal. Ill. S. Ct. R. 303(a)(1) (eff. July 1, 2017).

¶ 10                                                    II. ANALYSIS

¶ 11    Plaintiff challenges the dismissal of his complaint and argues that he alleged sufficient facts to state a viable claim. A motion to dismiss under section 2-615 of the Code of Civil Procedure challenges the legal sufficiency of a complaint based upon defects apparent on its face. *Beacham v. Walker*, 231 Ill. 2d 51, 57 (2008); see 735 ILCS 5/2-615 (West 2022). Though a plaintiff need not set forth all evidentiary facts that will eventually prove his claim, he must present sufficient facts to support each element of the cause of action alleged. *City of Chicago v. Beretta U.S.A. Corp.*, 213 Ill. 2d 351, 369 (2004). All well-pleaded facts, and all reasonable inferences that may be drawn from those facts, must be taken as true and construed in the light most favorable to the plaintiff. *HBLC, Inc. v. Egan*, 2016 IL App (1st) 143922, ¶ 25. "Where unsupported by allegations of fact, legal and factual conclusions may be disregarded." *Kagan v. Waldheim Cemetery Co.*, 2016 IL App (1st) 131274, ¶ 29. A cause of action should not be dismissed pursuant to section 2-615 unless it is clear that no set of facts could ever be proven that would entitle the plaintiff to recovery. *Tedrick v. Community Resource Center, Inc.*, 235 Ill. 2d 155, 161 (2009). We review an order granting a motion to dismiss *de novo*. *Id.*

¶ 12                                                         A

¶ 13    Plaintiff contends that the circuit court erred in dismissing his negligence claim against Baxter because he pleaded sufficient facts to state a claim. Defendants argue that the complaint was properly dismissed because plaintiff failed to plead that Baxter voluntarily undertook a duty,

that it breached that duty, or that plaintiff suffered a compensable injury as a result of the alleged breach.

¶ 14    Plaintiff's complaint alleged that Baxter was negligent:

"74. In negligent breach of its duty to provide Plaintiff with the best possible advice for Plaintiff's protection, both legal and professional, Baxter failed to exercise reasonable care in the performance of its voluntary undertaking and committed one or more of the following acts or omissions:

a. Baxter failed to disclose to Plaintiff that his interests were adverse to its own;

b. Baxter failed to disclose to Plaintiff at the outset of the internal investigation that his career with Baxter was in extreme jeopardy; Baxter failed to disclose to Plaintiff that it would protect PwC, Almeida, and Saccaro at all costs from SEC sanctions, even if it meant sacrificing Plaintiff—which of course is what happened;

d. [*sic*] Baxter failed to disclose to Plaintiff, upon his appointment as Treasurer or during the internal investigation, that Baxter's longstanding convention for the initial measurement of foreign currency denominated monetary assets and liabilities was possibly inconsistent with U.S. Generally Accepted Accounting Principles or that Baxter had been engaging in certain intra-company transactions solely to generate non-operating foreign exchange gains or avoiding losses, for many years before Plaintiff became Treasurer, and that Plaintiff would be the fall guy for Baxter's longstanding violation of federal

securities laws;

e. Baxter failed and/or refused to disclose the nature and substance of the allegations against him as gathered by the internal and SEC investigations;

f. Baxter failed to disclose to Plaintiff that he had a choice of outside counsel, not just one firm with both a prior and apparently ongoing professional connection to Baxter, nor did Baxter disclose to Plaintiff the nature of those connections; and Baxter failed to disclose to Plaintiff that Baxter's "cooperation" with the SEC included its false claim that Plaintiff was wholly or partially responsible for the subject foreign currency transactions; and

g. Baxter failed to disclose to Plaintiff his right to obtain an independent expert accounting opinion to respond to the allegations against him as gathered by the internal and SEC investigations."

¶ 15    To plead a negligence claim, a plaintiff must plead that the defendant owed a duty, that the defendant breached that duty, and that the plaintiff was harmed as a result of that breach. *Bell v. Hutsell*, 2011 IL 110724, ¶ 11. "Unless a duty is owed, there can be no recovery in tort for negligence." *Id.* (citing *American National Bank & Trust Co. of Chicago v. National Advertising Co.*, 149 Ill. 2d 14, 26 (1992)).

¶ 16    Generally, an employer owes no duty to an employee. Here, however, plaintiff contends that Baxter voluntarily undertook a duty "to provide Plaintiff with the best possible advice for Plaintiff's protection." This allegation is based on Athas clarifying questions in one of the interviews with plaintiff and Athas answering it "would be advisable" when plaintiff asked about

securing his own counsel. But the Illinois Supreme Court has construed the voluntary undertaking theory narrowly and has held that it is necessarily "limited to the extent of the undertaking." *Id.* ¶ 12.

¶ 17 Athas was Baxter's general counsel. A general counsel interacts with corporate officers and employees on a routine basis. When corporate counsel assists an employee in answering or understanding a question, the employee-employer relationship is not transformed and an expansive new duty created. Indeed, such a rule would have a chilling effect on corporate counsel's ability to perform even basic tasks. *Jakubowski v. Alden-Bennett Construction Co.*, 327 Ill. App. 3d 627, 641 (2002) ("[A] court may take public policy considerations into account when determining if a duty has been voluntarily undertaken."). Further, any voluntarily assumed duty is necessarily limited to the undertaking: Athas clarifying questions and recommending outside counsel. There is no allegation in the complaint that those actions violated a duty of care. *Engelland v. Clean Harbors Environmental Services, Inc.*, 319 Ill. App. 3d 1059, 1064 (2001) (holding that employer's undertaking to warn drivers of hazards was limited to potential hazards and not unforeseen hazards); *Frye v. Medicare-Glaser Corp.*, 153 Ill. 2d 26, 33 (1992) (holding that extent of pharmacy's duty created by placing drowsiness warning on prescription container was to warn of drowsiness, not to warn of all potential dangers involved in taking the medication); *Pippin*, 78 Ill. 2d at 209-10 (holding that housing authority's undertaking was limited to engaging security firm's services, not to ensuring resident safety itself).

¶ 18 Plaintiff relies on the Restatement (Second) of Torts in arguing a voluntary undertaking, and while that provision has been cited favorably by Illinois courts, it creates another hurdle for

plaintiff: the necessity of physical harm. According to the Restatement, a defendant will be liable

only for *physical harm* caused by the negligent performance of a voluntarily assumed duty:

> "One who undertakes, gratuitously or for consideration, to render services to
> another which he should recognize as necessary for the protection of the other's person or
> things, is subject to liability to the other for physical harm resulting from his failure to
> exercise reasonable care to perform his undertaking, if
>
> > (a) his failure to exercise such care increases the risk of such harm, or
> >
> > (b) the harm is suffered because of the other's reliance upon the
> undertaking." Restatement (Second) of Torts § 323 (1965).

¶ 19    Illinois courts have routinely held, based on the language of the Restatement, that "a duty

based on a voluntary undertaking is available only to claimants asserting physical harm." *Vassell*

*v. Presence Saint Francis Hospital*, 2018 IL App (1st) 163102, ¶ 58; see *Rojas Concrete, Inc. v.*

*Flood Testing Laboratories, Inc.*, 406 Ill. App. 3d 477, 483 (2010) (holding voluntary undertaking

doctrine inapplicable where plaintiff did not allege physical harm); *Martin v. State Farm Mutual*

*Automobile Insurance Co.*, 348 Ill. App. 3d 846, 854 (2004) (same); *Fox Associates, Inc. v. Robert*

*Half International, Inc.*, 334 Ill. App. 3d 90, 98 (2002) (same); *Weisblatt v. Chicago Bar Ass'n*,

292 Ill. App. 3d 48, 53-54 (1997) (same); *Furtak v. Moffett*, 284 Ill. App. 3d 255, 258 (1996)

(same). But see *Stefan v. State Farm Mutual Automobile Insurance Co.*, 284 Ill. App. 3d 727, 733

(1996) (applying voluntary undertaking to purely economic loss without analysis). Physical harm

includes personal injury or property damage but does not include emotional injury. *Brogan v.*

*Mitchell International, Inc.*, 181 Ill. 2d 178, 183-85 (1998).

¶ 20    Plaintiff alleged he suffered from clinical depression as a result of Baxter's conduct, but he alleges no physical harm as a result of that conduct. In the absence of a physical injury to the plaintiff, Illinois allows recovery for purely emotional injuries only under theories of intentional or negligent infliction of emotional distress. See *Rickey v. Chicago Transit Authority*, 98 Ill. 2d 546, 551 (1983) ("[I]n this State recovery has been consistently barred unless there was a contemporaneous physical injury or impact suffered by the plaintiff."). Because plaintiff does not allege a physical injury he cannot establish the element of duty. *Vassell*, 2018 IL App (1st) 163102, ¶ 58.

¶ 21    Acknowledging that Illinois courts have not found the physical injury requirement satisfied by an allegation of emotional harm, plaintiff cites several cases from other jurisdictions. See *Owens v. Connections Community Support Programs, Inc.*, 840 F. Supp. 2d 791, 800 (D. Del. 2012); *Gnirk v. Ford Motor Co.*, 572 F. Supp. 1201, 1203 (D.S.D. 1983); see also *Karn v. PTS of America, LLC*, 590 F. Supp. 3d 780, 804 (D. Md. 2022). None of these cases is persuasive. *Owens* and *Gnirk* both concern negligent infliction of emotional distress, which plaintiff here does not claim, and neither jurisdiction follows the "impact rule," as Illinois does, so those holdings are inapposite. *Benton v. Little League Baseball, Inc.*, 2020 IL App (1st) 190549, ¶ 77 ("Under the 'impact rule,' a direct victim can recover damages if he suffered emotional distress and a contemporaneous physical injury or impact, requiring actual physical contact of some sort."). *Karn* is distinguishable simply because the plaintiff in that case did suffer a contemporaneous physical injury. 590 F. Supp. 3d at 804.

¶ 22    For all these reasons, we conclude that the circuit court did not error in dismissing plaintiff's negligence claim against Baxter.

¶ 23                                          B

¶ 24    Plaintiff argues that the circuit court erred in dismissing his legal malpractice claim because he sufficiently alleged that he and Athas formed an attorney-client relationship that established a duty of care, that Athas breached that duty of care, and that Athas's breach proximately caused him harm. Defendants contend that plaintiff failed to allege an attorney-client relationship, and therefore there was no duty of care to breach. Defendants also argue that even if a duty existed, plaintiff failed to plead compensable harm.

¶ 25    An attorney-client relationship is created when a person "consults with an attorney 'for the purpose of securing that attorney's legal advice on a particular matter.' " *Leroy v. ERA Valdivia Contractors, Inc.*, 2023 IL App (1st) 211323, ¶ 26 (quoting *People v. Simms*, 192 Ill. 2d 348, 383 (2000)). A formal agreement is not necessary to form an attorney-client relationship, but the client must "manifest [an] authorization that the attorney act on [his] behalf, and the attorney must indicate [his] acceptance of the power to act on the client's behalf." (Internal quotation marks omitted.) *Simms*, 192 Ill. 2d at 382. "A client cannot unilaterally create the relationship, and the putative client's belief that the attorney is representing him is only one consideration." *Meriturn Partners, LLC v. Banner & Witcoff, Ltd.*, 2015 IL App (1st) 131883, ¶ 10. "However, if an attorney knows that a person is relying on his performance of services and he performs for that person's benefit without limitation, an attorney-client relationship can be found." *Id.* The Restatement (Third) of the Law Governing Lawyers summarizes the law on when an attorney-client relationship arises:

    "a person manifests to a lawyer the person's intent that the lawyer provide legal services for the person; and either

(a) the lawyer manifests to the person consent to do so; or

(b) the lawyer fails to manifest lack of consent to do so, and the lawyer knows or reasonably should know that the person reasonably relies on the lawyer to provide the services." Restatement (Third) of the Law Governing Lawyers § 14 (2000).

¶ 26 When alleging legal malpractice, a plaintiff must allege that he was the client of the defendant attorney or that the purpose of an attorney-client relationship between the defendant attorney and a third party was primarily for the benefit of the plaintiff. *Torres v. Divis*, 144 Ill. App. 3d 958, 963 (1986). The existence of an attorney-client relationship is a question of law. *Blue Water Partners, Inc. v. Mason*, 2012 IL App (1st) 102165, ¶ 38.

¶ 27 Plaintiff alleges that he formed an attorney-client relationship with Athas based on plaintiff's reasonable reliance and Athas's failure to disclaim such a relationship:

"Specifically, at the inception of the internal investigation conducted by Baxter, and facilitated by Athas, Plaintiff reasonably believed he could rely upon Athas for representation during the investigation, whereby Athas failed to notify Plaintiff that he was only serving Baxter in the investigation; he provided legal assistance to Plaintiff during questioning by Baxter's outside counsel and; when asked by Plaintiff after the third internal investigation interview is external counsel is advisable, Athas provided the singular recommendation of MB, with Baxter to pay MB's fees subject to certain conditions, which included Plaintiff not acting in a manner opposed to the best interests of Baxter. Therefore, as a result of Plaintiff's reasonable reliance upon Athas, an attorney-client relationship was formed."

What is most significant about this allegation is what is *not* alleged. Plaintiff does *not* allege that he sought out Athas's counsel. Rather, he was summoned to meetings with Baxter's outside counsel and Athas and another in-house lawyer. There are no facts to suggest that plaintiff sought legal advice from Athas or reasonably believed he was consulting Athas in a professional capacity. *Herbes v. Graham*, 180 Ill. App. 3d 692, 699 (1989) (The attorney-client relationship "appears to hinge on the client's *** manifested intention to seek professional legal advice." (Internal quotation marks omitted.)). Further, plaintiff does not allege that he met privately with Athas or that he conveyed any confidences to Athas. *King v. King*, 52 Ill. App. 3d 749, 752 (1977) (attorney-client relationship may be established where client seeks representation and divulges confidences); *cf. Nuccio v. Chicago Commodities, Inc.*, 257 Ill. App. 3d 437, 440 (1993) (finding that because plaintiff disclosed confidences during initial interview, and despite not hiring attorney, attorney should have been disqualified from representing adverse party in the same matter). Thus, there are no facts alleged that establish plaintiff's intent to seek legal advice from Athas. These are sophisticated parties: plaintiff is a highly educated executive and a corporate officer of a Fortune 500 company, and Athas was the corporation's general counsel. They had a basis to interact with each other in their respective roles within the corporation without implicating an attorney-client relationship.

¶ 28 An attorney-client relationship requires the consent of both the attorney and the client. *Simms*, 192 Ill. 2d at 382. This consent does not have to be written or even expressly stated, but the conduct of both the attorney and client must clearly evidence an intent to form such a relationship. *Id.* Athas's alleged conduct during the interviews did not demonstrate an intent to create an attorney-client relationship. Plaintiff pleads that Athas clarified questions asked in the

interview, but he does not plead the subject matter of the questions. Plaintiff does not plead the specific questions that were clarified, nor the way Athas clarified them. Were they questions related to corporate policy or culture? Or business strategy? What is *not* alleged is that Athas rendered a professional opinion in response to plaintiff seeking legal advice.

¶ 29    The complaint does allege that Athas advised plaintiff to retain independent counsel. To that point, the advice to secure counsel is an explicit exception to the prohibition on giving legal advice to unrepresented persons. Ill. R. Prof'l Conduct (2010) R. 4.3 (eff. Jan. 1, 2010). That does not establish an attorney-client relationship.

¶ 30    Plaintiff argues that Athas should have advised plaintiff at the outset that Athas did not represent him, and he relies on a series of professional rules that provide that corporate counsel should identify its client, should not provide legal advice when dealing with an unrepresented person, and should avoid conflicting representations. Ill. R. Prof'l Conduct (2010) Rs. 1.13(f), 4.3, 1.7(a) (eff. Jan 1, 2010). But the Rules of Professional Conduct are "designed to provide guidance to lawyers" and are not a basis for civil liability. Ill. R. Prof'l Conduct (2010), Scope (eff. Jan. 1, 2010). Moreover, even assuming a violation of any or all these rules, plaintiff has cited no authority that a rule violation creates an attorney-client relationship where one does not otherwise exist. See, *e.g.*, *Vandenberg v. Brunswick Corp.*, 2017 IL App (1st) 170181, ¶ 34 ("[T]he rules of professional conduct cannot give rise to [attorney's] duty ***, the violation of which served as the basis of [defendant's claim]."); *In re Estate of Weber*, 2021 IL App (2d) 200354, ¶ 21 ("The violation of a rule should not itself give rise to a cause of action against a lawyer, nor should it create any presumption in such a case that a legal duty has been breached.").

¶ 31 In reaching this conclusion, we do not wish to diminish counsel's professional obligation to explain the identity of his client when dealing with an unrepresented corporate employee. Ill. R. Prof'l Conduct (2010) Rs. 1.13(f), 4.3 (eff. Jan. 1, 2010). It is undisputed that neither Athas nor Rosenbloom (the outside counsel from McDermott Will & Emery who conducted the investigation and questioning) ever advised plaintiff that they represented Baxter and *not* him. This type of warning, commonly referred to as an *Upjohn* warning (based on *Upjohn Co. v. United States*, 449 U.S. 383 (1981)), is routinely given when corporate employees are interviewed as part of an internal investigation. While the failure to give such a warning can have professional consequences for counsel and can jeopardize a company's right to control the claim of privilege, the failure to give an *Upjohn* warning does not give rise to civil liability. See, *e.g.*, Practical Law Sec. Litig. & White Collar Crime, *Internal Investigations: Giving Upjohn Warnings*, 2017 WL 3161658 (last visited Sept. 16, 2024) (collecting cases). Our own research has not found a single case in any American jurisdiction that has imposed civil liability for failing to give such a warning.

¶ 32                                              C

¶ 33 Plaintiff argues that the circuit court erred in dismissing his duty to warn claim because he sufficiently alleged that Baxter owed plaintiff a duty to warn of plaintiff's need for legal representation and of the adversity between their interests. Defendants respond that the tort upon which plaintiff bases this claim has not been recognized in the state of Illinois, and Baxter therefore had no duty to warn plaintiff of anything. Defendants further argue that even if a duty existed, plaintiff has failed to allege the essential elements of the cause of action.

¶ 34 The complaint alleges that "Baxter as principal, owed Plaintiff, as its agent, a duty of due care to warn Plaintiff of his need for legal representation, the conflict between Plaintiff's interests

and those of the Defendant, and the substance of the allegations made against him." In support of this claim, plaintiff relies exclusively on the following section from the Restatement (Third) of Agency:

"A principal has a duty to deal with the agent fairly and in good faith, including a duty to provide the agent with information about risks of physical harm or pecuniary loss that the principal knows, has reason to know, or should know are present in the agent's work but unknown to the agent." Restatement (Third) of Agency § 8.15 (2006).

Illinois has never recognized a tort based on this section of the Restatement (Third) of Agency, and we could find no state that has.

¶ 35    Indeed, none of the 10 cases that cite this provision or are included in the Restatement (Third) of Agency's annotation suggest that it was intended to recognize an independent cause of action. See *Hudson v. Ardent Law Group, PLLC*, No. 82756-1-I, 2023 WL 2859334, at *7 (Wash. Ct. App. Apr. 10, 2023) ("We can find no Washington court that has adopted either version of [section 8.15] of the Restatement or recognized that any breach by a principal of a duty of good faith gives the agent *** an independent cause of action for such a breach ***."); *Universal Trading & Investment Co. v. Bureau for Representing Ukrainian Interests in International & Foreign Courts*, 605 F. Supp. 3d 273, 295 n.15 (D. Mass. 2022) (holding that under section 8.15, principal owes no duty of candor to agent other than provided by contract); *C&E Services, Inc. v. Ashland, Inc.*, 498 F. Supp. 2d 242, 264-65 (D.D.C. 2007) (holding principal had duty under section 8.15 pursuant to principal-agent relationship based in contract); *DR Distributors, LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 944 (N.D. Ill. 2021) (citing section 8.15 to support a client's duty, as principal, to furnish and not misrepresent facts to attorney, as agent, in fiduciary

attorney-client relationship); *Minnesota Life Insurance Co. v. Financial Institution Consulting Corp.*, 280 F. Supp. 3d 1057, 1067 (W.D. Tenn. 2017) (holding the duty under section 8.15 is not itself fiduciary in nature and cannot form the basis for a breach of fiduciary duty claim); *Amtrust North America, Inc. v. Safebuilt Insurance Services, Inc.*, No. 14 Civ. 09494(CM), 2015 WL 7769688, at *6 (S.D.N.Y. Dec. 1, 2015) (same); *MDM Group Associates, Inc. v. CX Reinsurance Co. Ltd.*, 165 P.3d 882, 889 (Colo. App. 2007) (same); *Metropolitan Enterprise Corp. v. United Technologies International Corp.*, No. Civ. 303CV1685JBA, 2005 WL 2300382, at *9 (D. Conn. Sep. 21, 2005) (same).

¶ 36    Plaintiff has given us no compelling reason to recognize a new cause of action, but in any event, the business of creating new torts is best left to the legislature, which is uniquely suited to weigh competing policy considerations. See *Cramer v. Insurance Exchange Agency*, 174 Ill. 2d 513, 527 (1996) ("We hesitate to recognize a new tort where the legislature has constantly acted to remedy a perceived evil in a certain area."). This is particularly so here, where to recognize this new cause of action would trench upon Illinois public policy favoring employment at-will. *Turner v. Memorial Medical Center*, 233 Ill. 2d 494, 502-03 (2009).

¶ 37                                III. CONCLUSION

¶ 38    For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 39    Affirmed.

*Bohaboy v. Baxter International, Inc.*, **2024 IL App (1st) 230868**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2022-L-002528; the Hon. Thomas M. Donnelly, Judge, presiding. |
| **Attorneys for Appellant:** | Steven J. Rosenberg, David J. Ben-Dov, and Toni F. Esparza, of Golan Christie Taglia LLP, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Sean M. Berkowitz, Nicholas J. Siciliano, Kirsten C. Lee, and Renatta A. Gorski, of Latham & Watkins LLP, of Chicago, and Whitney B. Weber, of Latham & Watkins LLP, of San Francisco, California, for appellees. |